Brody A. McBride (SBN 270852)
Trenton G. Lamere (SBN 272760)
SINGLETON SCHREIBER
McKENZIE & SCOTT LLP
450 A Street, 5th Floor
San Diego, California 92101
P: (619) 771-3473
F: (619) 255-1515
bmcbride@ssmsjustice.com
tlamere@ssmsjustice.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NAYANA CHAMBERS,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN DIEGO, JOSHUA CUMMINGS, and UNKNOWN LAW-ENFORCEMENT OFFICERS,<br><br>Defendants. | No. '21CV1274 BEN LL<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY TRIAL DEMANDED** |

/ / /

/ / /

/ / /

# INTRODUCTION

1. After peacefully demonstrating in Downtown San Diego for police reform following the murder of George Floyd, Plaintiff Nayana Chambers and her companions were attempting to return to their car to go home.

2. Even though Ms. Chambers was part of a large group of individuals who had not committed any violent or destructive crime, did not pose a threat to the safety of officers or others, and were not actively resisting or fleeing arrest, currently unknown law-enforcement officers working for the San Diego Police Department ("SDPD") fired tear gas and/or pepper spray into the crowd. And as one district court explained:

> . . . use of less lethal, crowd control weapons have surely chilled speech. To start, exposure to tear gas and pepper spray is "excruciating." . . . ("Imagine the hottest chile pepper you ever ate, then imagine an even hotter one that you would never eat, and then imagine touching that pepper and inadvertently sticking your finger in your eye. That is what a small dose of pepper spray is like."). . . . Though "less lethal," these devices have been sufficiently lethal to deter some protestors from protesting again. . . . The Court holds that . . . use of these weapons would chill a person of "ordinary firmness" from protesting.

*Black Lives Matter Seattle-King Cnty. v. City of Seattle, Seattle Police Dep't*, No. 2:20-CV-00887-RAJ, 2020 WL 3128299, at *3 (W.D. Wash. June 12, 2020).

3. Officers then began making mass, indiscriminate arrests of demonstrators without probable cause.

4. Without warning, an officer tackled Ms. Chambers—who was 5'0" and weighed 103 pounds at the time—from behind, punched her in the head, pressed his entire body onto her body, and then arrested her without probable cause.

5. As a result of the officers' use of excessive force on, and unlawful arrest of, Ms. Chambers, she suffered general and special damages. Accordingly, Ms. Chambers now sues the City of San Diego, and those of its police department personnel responsible for her injuries, for recovery of damages pursuant to 42 U.S.C. § 1983 and various state laws.

# JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. §§ 1331 and 1367, as Plaintiff asserts causes of action arising under 42 U.S.C. § 1983 and state-law claims supplemental to the section-1983 claims.

7. Plaintiff has complied with all California Government Claims Act requirements for asserting state-law causes of action against public entities and employees, like Defendants, including the presentation of a claim for damages to the City, which the City has never rejected or accepted. *See* Cal. Gov't Code §§ 900 et seq.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as the events giving rise to this action occurred in the City of San Diego, California, which is located within the Southern District of California.

## PARTIES

9. Plaintiff Nayana Chambers is and was, at all times relevant to this pleading, an individual living in San Diego County.

10. Defendant City of San Diego ("City") is a municipal entity duly organized under California law. The San Diego Police Department ("SDPD") is the City's primary law-enforcement agency.

11. Defendant Joshua Cummings (#7165) was, at all times relevant to this pleading, an individual acting under color of state law, engaged in the course and scope of his work as a law-enforcement officer for the City and SDPD.

12. Plaintiff is currently unaware of the true identities of Defendants Unknown Law-Enforcement Officers ("Unknown Officers"). These defendants were, at all times relevant to this pleading, individuals acting under color of state law, engaged in the course and scope of their work for the City and/or SDPD. Plaintiff will seek leave to amend this pleading if/when she discovers the true identities of these defendants.

## FACTS

13. On the evening of May 31, 2020, Ms. Chambers joined hundreds of other peaceful demonstrators in the Downtown San Diego area to demonstrate for justice and police reform following the murder of George Floyd.

14. Ms. Chambers and her companions remained peaceful the entire time. That

COMPLAINT

is, they did not engage in any violent or destructive activity; did not pose a threat of harm to anyone present; and were not resisting or fleeing arrest.

15. Around 12:30 a.m. (on June 1, 2020), Ms. Chambers and her companions were attempting to return to their car, so they could go home.

16. As they left Downtown, walking up Bankers Hill, Unknown Officers had closed off several intersections and streets, effectively blocking Ms. Chambers and her companions from getting to their car. (Many demonstrators had parked in the Bankers Hill area before walking Downtown to demonstrate.)

17. When Ms. Chambers reached the area of 5th Avenue and Beech, she and other demonstrators were met with a large group of heavily armed and armored officers.

18. Unknown Officers made it impossible for demonstrators like Ms. Chambers to disperse and go home.

19. Unknown Officers then indiscriminately fired tear gas and/or oleoresin capsicum ("OC" or pepper spray) into the crowd.

20. Unknown Officers then began making mass, indiscriminate arrests.

21. Without warning, one of the Unknown Officers tackled Ms. Chambers from behind. At the time, Ms. Chambers was approximately 5'0" and weighed 103 pounds. The officer was more than twice the size of Ms. Chambers.

22. The officer slammed Ms. Chambers into a wall. When she turned around to see who had tackled her, the officer punched the prescription glasses off Ms. Chambers' face. Ms. Chambers got down on the ground, face down, with her knees under her stomach, similar to a fetal position.

23. The officer then got on top of Ms. Chambers, pressing his entire body onto her body. This caused her ankles to bend out, spraining one and injuring the other. This also caused injuries to Ms. Chambers lower back and pelvic area. And with her knees to her chest, the officer's weight was also starting to suffocate Ms. Chambers. The officer finally got off Ms. Chambers after applying handcuffs.

24. All the while, the officer (apparently White or Latino) screamed profanities

COMPLAINT

at Ms. Chambers, a young Black woman, accusing her of being the reason *his* city was "being destroyed." When Ms. Chambers asked the officer to put her glasses back on for her, he responded, "No! Shut the F*** up!"

25. At some point, Defendant SDPD Officer Cummings assumed custody of Ms. Chambers, arresting her for unlawful assembly in violation of California Penal Code section 407. Ms. Chambers was taken to a SDPD mass arrest facility and released sometime later that day (on June 1, 2020).

26. As an actual and proximate result of the foregoing actions and omissions by Defendants, Ms. Chambers suffered general and specific damages, including medical expenses, physical pain, mental suffering, disfigurement, inconvenience, anxiety, humiliation, and emotional distress. Plaintiff thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 – Excessive Force

### (Against Unknown Officers)

27. The foregoing paragraphs are incorporated herein by this reference.

28. In using force on Ms. Chambers on May 31, 2020, and/or June 1, 2020, these defendants acted under color of state law.

29. The force these defendants used on Plaintiff—including tear gas/pepper spray, tackling, punching, and body pressing—was excessive under the circumstances and, therefore, a violation of Fourth Amendment right to be free from unreasonable seizures. The force defendants used on Plaintiff also chilled Plaintiff's speech in violation of the First Amendment rights to speech and to seek redress of government grievances, in that such use of force was retaliation for Plaintiff's exercising First Amendment rights and/or was used in reckless disregard of these rights.

30. As a direct and foreseeable result of these defendants' use of excessive force, Plaintiff suffered general and specific damages, including medical expenses, physical pain, mental suffering, disfigurement, inconvenience, anxiety, humiliation, and emotional

distress. Plaintiff thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

31. Because these defendants used force against Plaintiff in reckless disregard of her Fourth Amendment rights, punitive damages should be assessed against these defendants in an amount that will both punish their conduct and deter such conduct in the future.

## SECOND CAUSE OF ACTION
## 42 U.S.C. § 1983 – Unlawful Arrest
## (Against Unknown Officers and Cummings)

32. The foregoing paragraphs are incorporated by this reference.

33. By arresting Ms. Chambers on June 1, 2020, defendants acted under color of state law.

34. At the time of her arrest, there was no probable cause to believe Ms. Chambers had violated California Penal Code section 407 because there was no evidence to indicate that Ms. Chambers had assembled together with one or more other persons "to do an unlawful act, or do a lawful act in a violent, boisterous, or tumultuous manner."

35. Defendants were making mass arrests without making individualized determinations of probable cause to arrest each individual being arrested. And, as indicated by the statements made by the officer who initially tackled and arrested Ms. Chambers, officers were making arrests based on personal animus toward individuals like Ms. Chambers. This was an unreasonable seizure under the Fourth Amendment. The unlawful arrest of Plaintiff also chilled Plaintiff's speech in violation of the First Amendment right to speech and to seek redress of government grievances, in that such arrest was retaliation for Plaintiff's exercising First Amendment rights and/or was done in reckless disregard of these rights.

36. As a direct and foreseeable result of these defendants' unlawful arrest of Plaintiff, she suffered general and specific damages, including medical expenses, physical pain, mental suffering, disfigurement, inconvenience, anxiety, humiliation, and emotional

distress. Plaintiff thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

37. Because these defendants used force against Plaintiff in reckless disregard of her Fourth Amendment rights, punitive damages should be assessed against these defendants in an amount that will both punish their conduct and deter such conduct in the future.

### THIRD CAUSE OF ACTION
### 42 U.S.C. § 1983 – *Monell*
### (Against City)

38. The foregoing paragraphs are incorporated by this reference.

39. In using excessive force on, and unlawfully arresting, Plaintiff on May 31, 2020, and/or June 1, 2020, the individual defendants acted under color of state law.

40. The use of excessive force on, and unlawful arrest of, Plaintiff violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures. This use of force also violated the First Amendment right to speech and to seek redress of government grievances, in that such use of force was retaliation for Plaintiff's exercising First Amendment rights and/or was used in reckless disregard of these rights. Such use of force, and unlawful arrests, for mere "crowd control" purposes, in other words, violates both the First and Fourth Amendments.

41. The City is liable for this deprivation of Plaintiff's constitutional rights pursuant to the Supreme Court's holding in *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), and its progeny, which provide that a local governing body may be held liable for violations of constitutional rights committed by the entity's employees if the violations arose from, among other things: (a) an official policy or settled practice/custom among the entity's employees; and/or (b) deliberate indifference to training and supervision policies that are inadequate to prevent violations of law by the entity's employees.

42. More specifically, the City is liable under *Monell* because the deprivation of

7
COMPLAINT

Plaintiff's First and Fourth Amendment rights was substantially caused by a practice/custom of City law-enforcement officers using less-lethal force (including projectile, chemical, and impact devices) and mass arrests for mere "crowd control" purposes, regardless of whether demonstrators' individual actions justify such use of force, results in routine constitutional violations.

43. It is, moreover, apparent that law-enforcement officers authorized to operate, and operating, in the City at the time of this incident lacked the necessary training and supervision needed to protect constitutional guarantees. That is, the violation of Plaintiff's First and Fourth Amendment rights was substantially caused by the City's deliberate indifference to the training and supervision needs of its law-enforcement officers with regard to performing their duties within the bounds of the First and Fourth Amendments. The City has failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline its law-enforcement officers in deliberate indifference to Plaintiff's, and other individuals', constitutional rights.

44. The foregoing practice/custom, along with the City's deliberate indifference to this lack of training and supervision, were each moving forces behind the violations of Plaintiff's constitutional rights under the First and Fourth Amendments.

45. As a direct and foreseeable result of this practice or custom, and of the City's deliberate indifference to the lack of training and supervision of their officers, Plaintiff suffered general and specific damages, including medical expenses, physical pain, mental suffering, disfigurement, inconvenience, anxiety, humiliation, and emotional distress. Plaintiff thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### Cal. Civ. Code § 52.1(b) – Bane Act

**(Against Cummings, Unknown Officers, and City)**

46. The foregoing paragraphs are incorporated herein by this reference.

47. On May 31, 2020, and June 1, 2020, the individual defendants interfered,

8

COMPLAINT

through intentional physical intimidation and coercion with Plaintiff's First and Fourth Amendment rights by using excessive force on Plaintiff and unlawfully arresting Plaintiff.

48. These defendants intentionally subjected Plaintiff (and/or recklessly disregarded her constitutional rights by subjecting her) to a serious use of force with zero justification for the use of *any* force, followed by an unlawful arrest.

49. As a direct and foreseeable result of these Defendants' actions, Plaintiff suffered general and specific damages, including medical expenses, physical pain, mental suffering, disfigurement, inconvenience, anxiety, humiliation, and emotional distress. Plaintiff thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

50. Moreover, because these defendants were acting in the course and scope of their employment as law-enforcement officers when the foregoing conduct occurred, the City is vicariously liable for the injuries Plaintiff suffered as a result of these officers' tortious conduct. *See* Cal. Gov't Code § 815.2.

## FIFTH CAUSE OF ACTION

### Battery

### (Against Unknown Officers and City)

51. The foregoing paragraphs are incorporated herein by this reference.

52. On May 31, 2020, and June 1, 2020, the individual defendants intentionally touched Plaintiff and engaged in actions which caused Plaintiff to be touched.

53. These defendants used force that was, under all relevant circumstances, unreasonable.

54. At no point did Plaintiff consent to any use of force by any defendant.

55. As a direct and foreseeable result of these defendants' harmful and offensive contacts with Plaintiff's person, Plaintiff suffered general and specific damages, including medical expenses, physical pain, mental suffering, disfigurement, inconvenience, anxiety, humiliation, and emotional distress. Plaintiff thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

9

COMPLAINT

56. Moreover, because these defendants were acting in the course and scope of their employment as law-enforcement officers when the foregoing conduct occurred, the City is vicariously liable for the injuries Plaintiff suffered as a result of these officers' tortious conduct. *See* Cal. Gov't Code § 815.2.

## SIXTH CAUSE OF ACTION

### Negligence

### (Against Cummings, Unknown Officers, and City)

57. The foregoing paragraphs are incorporated herein by this reference.

58. At the time of the incident giving rise to this action, the individual defendants had a duty to perform their law-enforcement duties as would a reasonable officer in the same situation, including a duty to be reasonable in making pre-contact tactical decisions and plans, using force, making arrests, and intervening in other officers' use of unreasonable force and unlawful arrests.

59. These defendants breached the foregoing duties when, without a reasonable pre-contact tactical plan, used excessive force on Plaintiff when, in fact, zero force was justified. These defendants further breached the foregoing duties when they unlawfully arrested Plaintiff.

60. As a direct and foreseeable result of these defendants' respective breaches of duty, Plaintiff suffered general and specific damages, including medical expenses, physical pain, mental suffering, disfigurement, inconvenience, anxiety, humiliation, and emotional distress. Plaintiff thus seeks monetary damages to compensate for these injuries, in an amount to be determined at trial.

61. Moreover, because these defendants were acting in the course and scope of their employment as law-enforcement officers when the foregoing conduct occurred, the City is vicariously liable for the injuries Plaintiff suffered as a result of these officers' tortious conduct. *See* Cal. Gov't Code § 815.2.

## PRAYER FOR RELIEF

62. Based on the foregoing facts and causes of action, Plaintiff seeks the

10
COMPLAINT

following relief:

a. judgment in favor of Plaintiff and against Defendants on all causes of action asserted herein;

b. as to all causes of action, compensatory damages (including economic and non-economic damages), in amounts to be determined at trial;

c. as to the § 1983 claims asserted against individual defendants, punitive damages, against the individual defendants only, in an amount sufficient to punish the conduct giving rise to this action and to deter such conduct in the future;

d. as to the Bane Act claim, triple the amount of Plaintiff's actual damages or minimum statutory damages, whichever is greater;

e. reasonable attorney fees and costs pursuant to 42 U.S.C. § 1988, California Government Code section 52.1(h), California Code of Civil Procedure section 1021.5, and all other relevant statutory and case law; and

f. any and all other relief in law or equity to which Plaintiff may be entitled and which this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands, under the Seventh Amendment, a trial by jury as to each and every cause of action asserted herein.

Dated: July 14, 2021     SINGLETON SCHREIBER
McKENZIE & SCOTT LLP

By:    */s/Trenton G. Lamere*
       Trenton G. Lamere

Attorneys for Plaintiff

COMPLAINT